UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JESSE W., )<br>)<br>        *Plaintiff* )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>*Acting Commissioner of Social Security*,[1] )<br>)<br>        *Defendant* ) | No. 2:20-cv-00358-DBH |

**REPORT AND RECOMMENDED DECISION**[2]

This Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing work existing in significant numbers in the national economy.  The plaintiff seeks remand on the related bases that the ALJ (i) rejected his allegations of an inability to work with co-workers and supervisors, corroborated by his father, without adequate findings, (ii) erred in relying on the opinions of agency nonexamining consultants Brian Stahl, Ph.D., and Leigh Haskell, Ph.D., for the proposition that he had no such restrictions, and (iii) ignored the uncontradicted testimony of both James Conway, the vocational expert (VE) present at hearing, and David Meuse, a VE who submitted a post-hearing affidavit on his behalf, concerning the impact of his personality disorder on his ability to work.  *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. § 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted his administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement.  Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

No. 11) at 3-12. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had the severe impairments of personality disorder, attention deficit hyperactivity disorder (ADHD), depression/bipolar disorder, and anxiety disorder, Finding 2, Record at 14; that he had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the nonexertional limitations that he was able to perform simple tasks for two-hour blocks of time over the course of a normal work schedule, could never work with the public, and could adapt to simple changes in the work routine, Finding 4, *id*. at 18; that, considering his age (36 years old, defined as a younger individual, on the date his SSI application was filed, February 16, 2018), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 6-9, *id*. at 22; and that he, therefore, had not been disabled from February 16, 2018, the date his SSI application was filed, through the date of the decision, December 23, 2019, Finding 10, *id*. at 24. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the

conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion
### A. ALJ's Discounting of Subjective Allegations

The plaintiff first asserts that, in discounting both his subjective allegations and his father's testimony concerning his social difficulties, the ALJ failed to (i) explain how he could relate to persons other than his relatives, particularly supervisors, (ii) provide the "detailed findings required by the First Circuit[,]" or (iii) specify which statements she found credible and which she did not.  Statement of Errors at 3-4.

As the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 15) at 7, an ALJ is not required "to 'summarize' or discuss line by line a claimant's entire testimony[,]" *Benjamin B. v. Berryhill*, No. 1:17-cv-00423-DBH, 2018 WL 4896716, at *6 (D. Me. Oct. 8, 2018) (rec. dec., *aff'd* Nov. 6, 2018).  Because, in this case, the ALJ addressed the plaintiff's allegations concerning his allegedly disabling level of social difficulty and adequately explained her reasons for discrediting them, I find no basis on which to disturb her assessment.

The ALJ acknowledged that the plaintiff had alleged that "his depression 'makes life almost impossible', his bipolar disorder 'makes dealing with co-workers and bosses beyond

3

challenging', and his 'mental illness completely cripples' him[,]" and that his father's "report generally tracks the [plaintiff]'s self-report of his symptoms and limitations[.]" Record at 19, 21. However, she explained that she found the plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms . . . inconsistent with the evidence of record." *Id*. at 19. Specifically, she noted, the evidence of record demonstrated that, since the plaintiff's alleged onset date of disability, February 16, 2018, (i) he had "received conservative mental health treatment" and "had no psychiatric hospitalizations[,]" (ii) his prescription medication appeared to have been "effective in managing his symptoms," (iii) "mental status examinations reveal[ed] largely unremarkable findings," and (iv) he "retain[ed] sufficient mental functioning to complete numerous daily activities." *Id*. at 19. She then detailed the record evidence supporting each of those findings. *See id*. at 19-20. Against that backdrop, she explained that she found the mental assessments of Drs. Stahl and Haskell, both of whom deemed the plaintiff capable of working with co-workers and supervisors but not the general public, persuasive. *See id*. at 20-21.

No more was required. *See, e.g., Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."); *Vito S. S., Jr. v. Saul*, No. 2:18-cv-00229-GZS, 2019 WL 2578077, at *2 (D. Me. June 24, 2019) (rec. dec., *aff'd* July 15, 2019) (although Social Security Ruling 16-3p eliminated the use of the term "credibility," *Frustaglia*'s deferential standard of review continues to apply); *Hadley v. Astrue*, No. 2:10-cv-51-GZS, 2010 WL 5638728, at *3 (D. Me. Dec. 30, 2010) (rec. dec., *aff'd* Jan. 24, 2011) (declining to disturb ALJ's partial discounting of claimant's subjective allegations when, even if claimant

was correct in her assertion that two reasons for the finding were unsupported by the record, the ALJ supplied other well-supported reasons).

### B. ALJ's Mental RFC Determination

The plaintiff next contends that, in purporting to rely on the Stahl and Haskell assessments, the ALJ "misquoted" them, omitting to add or address their findings that he was "Moderately Limited" in both his "ability to work in coordination with or in proximity to others without being distracted by them" (a sub-finding within the category "Sustained Concentration and Persistence Limitation") and his "ability to accept instructions and respond appropriately to criticism from supervisors" (a sub-finding within the category "Social Interaction Limitation"). Statement of Errors at 4 (citations and internal quotation marks omitted); Record at 72, 79-80.

He acknowledges that, when Drs. Stahl and Haskell were directed to "[e]xplain in narrative form the [plaintiff's] social interaction capacities and/or limitations," they deemed him "able to work with coworkers and supervisors but not with the public[,]" explaining, "Goes . . . to AA, shops, church, uses public transportation." Record at 72, 80; Statement of Errors at 5. However, he argues that because they cited only his public interactions, their opinions lacked "sufficient substance . . . to individually or collectively serve as substantial evidence to support [the ALJ's] conclusion on this issue of being able to work with supervisors, or coworkers." Statement of Errors at 5. Accordingly, he reasons, the ALJ necessarily relied on her own impermissible lay assessment of the medical evidence to find him capable of interacting with co-workers and supervisors. *See id*. at 8. I am unpersuaded.

First, as the commissioner notes, *see* Opposition at 8-9, the sub-findings to which the plaintiff points are not RFC assessments, *see, e.g., Christine C. v. Saul*, No. 2:19-cv-00266-GZS, 2020 WL 3047365, at *4 (D. Me. June 7, 2020) (rec. dec., *aff'd* June 23, 2020) ("[A]n agency nonexamining consultant's RFC assessment is contained in the narrative portion summarizing his

5

sub-findings.") (citation and internal quotation marks omitted). The ALJ adopted and accurately reflected the RFC assessments of Drs. Stahl and Haskell. *Compare* Finding 4, Record at 18 *with id*. at 72, 80.

Second, while the plaintiff cites *Parker v. Colvin*, No. 1:15-cv-00446-JHR, 2016 WL 4994997, at *5 (D. Me. Sept. 19, 2016), *Joseph R. G. v. Saul*, No. 2:20-cv-00147-DBH, 2021 WL 1087809, at *5 (D. Me. Mar. 21, 2021) (rec. dec., *aff'd* Apr. 6, 2021), and *Lindsey v. Soc. Sec. Admin. Comm'r*, No. 1:10-cv-00038-JAW, 2011 WL 86567, at *6 (D. Me. Jan. 10, 2011) (rec. dec., *aff'd* Feb. 28, 2011), for the proposition that an ALJ's failure to resolve tensions between an agency nonexamining consultant's sub-findings and mental RFC assessment is sufficiently problematic to warrant remand, *see* Statement of Errors at 6-7 & n.3, those cases are distinguishable.

*Parker* is distinguishable in that, there, "the court did not hold that remand was independently warranted on th[e] basis" of an agency nonexamining consultant's failure to explain the seeming discrepancy between his sub-finding and RFC assessment "but, rather, on the basis of several collective errors, including the ALJ's errors in characterizing the opinions of two agency nonexamining consultants as consistent with each other and in purporting to give the mental RFC opinion of one consultant significant weight but ignoring his finding therein that the [claimant] would do better in employment that limited interactions." *Christine C.*, 2020 WL 3047365, at *5.

*Joseph R. G.* is distinguishable in that, there, the ALJ (i) "stated that she gave great weight to the [testifying medical expert's] testimony but inexplicably omitted any social limitation pertaining to co-workers or supervisors" and (ii) relied on a blend of responses by a VE present at the claimant's hearing to both her first and third hypothetical questions without acknowledging

the discrepancy between her RFC finding and the limitations included in the third hypothetical question. *Joseph R. G.*, 2021 WL 1087809, at *3-4.

*Lindsey* is distinguishable in that, there, the ALJ apparently relied solely on one agency nonexamining consultant's assessment, *see Lindsey*, at *5-7, while, in this case, the ALJ relied not only on two agency nonexamining consultants' assessments but also on the report of an agency examining consultant, Richard Parker, Ph.D., who assessed no social limitations, and a detailed review of the plaintiff's activities of daily living and treatment history, *see* Record at 19-21; *see also, e.g., Russell B. v. Berryhill*, No. 1:17-cv-00418-JHR, 2018 WL 5258615, at *5 (D. Me. Oct. 21, 2018) (distinguishing *Lindsey* on same basis).

Third, that Drs. Stahl and Haskell cited the plaintiff's ability to attend AA meetings, shop, go to church, and use public transportation in support of their assessment that he was able to work with co-workers and supervisors, *see* Record at 72, 80, does not invalidate the ALJ's reliance on their assessments.  As the commissioner notes, *see* Opposition at 12-13, the plaintiff's last significant work experience dated to 2016, and he was imprisoned prior to his alleged onset date of disability, *see* Record at 38-42.  The plaintiff offers no persuasive reason to second-guess the experts' conclusion that other social interactions in which he engaged shed light on his ability to interact with co-workers and supervisors.[3]

---

[3] The plaintiff further complains that, while Drs. Stahl and Haskell used the four new "B criteria" categories of Listing 12.00E, Appendix 1 to 20 C.F.R. Part 404, Subpart P, as amended effective as of January 2017, they erroneously used the old sub-finding categories.  *See* Statement of Errors at 7-8 & n.5.  For example, whereas Drs. Stahl and Haskell made sub-findings concerning the plaintiff's "ability to accept instructions and respond appropriately to criticism from supervisors[,]" Record at 72, 80, the revised sub-findings include, in relevant part, "responding to requests, suggestions, criticism, correction, and challenges[,]" Listing 12.00E(2).  Nonetheless, the commissioner describes the new sub-finding categories merely as "examples illustrat[ing] the nature of [each of the four] area[s] of mental functioning[,]" adding, "We do not require documentation of all of the examples." Listing 12.00E(1)-(4). The plaintiff does not explain, and it is not apparent, how the use of the prior sub-finding categories was error in these circumstances.  In any event, he makes no showing that any such error was harmful.  *See* Statement of Errors at 7-8 & n.5.

7

Fourth, and in any event, as the commissioner observes, *see* Opposition at 15-16 n.4, the jobs that the ALJ found the plaintiff capable of performing – Dishwasher, *Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed., rev. 1991) (*DOT*) § 319.687-010, and Landscape Laborer, *DOT* § 408.687-014 – are rated as "[n]ot [s]ignificant" in the category of "People: 8 – Taking Instructions – Helping[,]" *DOT* §§ 319.687-010, 408.687-014.  This court "has construed that rating as consistent with limitations to occasional, brief, and superficial contact with coworkers and supervisors[.]" *Shatema B. v. Saul*, No. 1:19-cv-00566-NT, 2020 WL 4383802, at *4 (D. Me. July 31, 2020) (rec. dec., *aff'd* Aug. 17, 2020) (citation and internal quotation marks omitted).  A "moderate" limitation is defined to mean that an individual's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair."  Listing 12.00F(2)(c). The plaintiff makes no showing that a sub-finding of a moderate limitation in interacting with co-workers and supervisors would preclude the performance of either of those two jobs.

Remand, accordingly, is unwarranted on the basis of the plaintiff's second point of error.

### C.  ALJ's Handling of Vocational Evidence

The plaintiff next contends that the ALJ erred in ignoring the testimony of both VE Conway and VE Meuse that his personality disorder would be a problem in the workplace.  *See* Statement of Errors at 9-12.  I find no reversible error.

The ALJ asked Conway whether a hypothetical person with the functional limitations she ultimately adopted could perform other work existing in the national economy.  *Compare* Record at 61 *with* Finding 4, *id*. at 18.  Conway testified that such a person could perform the jobs of cleaner/housekeeper, dishwasher, and landscape laborer.  *See id*. at 61-62.

The plaintiff's counsel later inquired whether Conway had any expertise in dealing with the subject of a diagnosed personality disorder.  *See id*. at 64.  Conway said that he had.  *See id*. at 64-65.  The plaintiff's counsel asked, "[W]ould a person like this, who had a diagnosis, you know,

8

and this is a severe personality disorder in Social Security terms, wouldn't they have limitations in terms of being able to adapt to work?" *Id*. at 65. Conway replied, "If you could give me functional limitations, I can answer your question, but not a broad question . . . about a disability." *Id*. The plaintiff's counsel posited a "person [who] would have difficulty getting along, relating to, appropriately, coworkers and supervisors." *Id*. at 66. Conway testified, "Yes, that would . . . cause a problem at work. Absolutely." *Id*.

Post-hearing, the plaintiff submitted an affidavit of Meuse in which Meuse stated that he had been asked to assume that a hypothetical person had a personality disorder consistent with the diagnostic criteria set forth in the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("*DSM-V*"), which he recited in his affidavit. *See id.* at 268-69. He noted that he had also been provided information concerning the plaintiff's age, work experience, and earnings history. *See id*. at 269. He then offered the following opinions:

> 13.   A person with a diagnosed personality disorder and specifically with additional antisocial and avoidant traits and features – is going to have difficulties fitting in the workplace, whether because of his inability to obey the rules of the employment [sic], his inability to interact appropriately with co-workers, supervisors or the public, or his ability [sic] to complete tasks in a timely manner. He may also have difficulties with attendance. As I have been informed of this specific Claimant's work history – vocational difficulties have proved to have been the case for this gentleman to date.
>
> 14.   In my professional opinion, strictly speaking – the cumulative effect of a pervasive pattern of instability of interpersonal relationships together with failure to conform to social norms, deceitfulness, aggressiveness, impulsivity and reckless disregard for safety of self or others – would preclude the ability to maintain full time work over any significant period of time. This again has proven to be evident in this Claimant's history.
>
> 15.   While such a person may be hired for a job, should these behaviors begin to be expressed in day-to-day interactions with others – he would be terminated. Additionally, I would expect to see the continued pattern of relatively short-duration jobs also. There might be as well some longer term jobs where the employer was more lenient or the job was highly structured (i.e. work release from jail), or perhaps the claimant received successful treatment, typically in the way of

> psychotropic medication – though medication non-compliance is unfortunately quite typical in this specific instance.

*Id*. at 269.

The ALJ explained that she had considered the Meuse affidavit but "remain[ed] unpersuaded by counsel's repeated attempt, as he has submitted similar reports in other cases before this Agency, to refute the validity of evidence provided by testifying vocational experts." *Id*. at 23.  She ignored the substance of both Conway's testimony in response to the plaintiff's counsel's question and Meuse's statements concerning the impact of a personality disorder on an individual's ability to work.  *See id*. at 22-24.  Yet, any error in so doing is harmless.

As the commissioner underscores, *see* Opposition at 17-19, neither Conway nor Meuse premised those opinions on an assessment of the plaintiff's mental functional limitations by a medical or psychological expert.  Conway responded to an on-the-spot assessment by the plaintiff's counsel, and Meuse assumed limitations predicated on his reading of the *DSM-V* and information provided to him about the plaintiff's work history.  As the commissioner observes, "In essence, Plaintiff seeks to transform Mr. Meuse into a medical expert, who assessed greater mental limitations due to Plaintiff's personality disorder than any of the psychologists who reviewed the record evidence (or, in the case of Dr. Parker, actually examined Plaintiff)." Opposition at 17-18.  Because the opinions at issue lack a predicate anchored in the expert medical or psychological evidence, they were entitled to no weight, and ignoring them was at most harmless error.  *See, e.g., Julia C. v. Saul*, 2:18-cv-00334-DBH, 2019 WL 3855313, at *4 (D. Me. Aug. 16, 2019) (rec. dec., *aff'd* Oct. 17, 2019) ("To require an ALJ to impose vocational limitations based on a vocational expert's assessment of certain portions of the medical record, rather than the vocational expert's assessment of the ALJ's RFC finding, would be inconsistent with the role of a

vocational expert and contrary to established precedent that it is the ALJ's responsibility, and not the responsibility of a vocational expert, to assess a claimant's RFC.").[4]

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 5th day of September, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[4] At oral argument, the plaintiff's counsel contended that Judge Hornby affirmed Magistrate Judge Nivison's recommended decision in *Julia C.* on a narrower ground. On the contrary, while Judge Hornby elaborated on two separate points first raised by the plaintiff's counsel during oral argument on the plaintiff's objection to the recommended decision, he "concur[red] with the recommendations of the United States Magistrate Judge for the reasons set forth in the Recommended Decision" and adopted that decision. *Julia C.*, 2019 WL 5270199, at *1-2. The plaintiff's counsel also cited *Dishman v. Colvin*, No. 2:16-cv-00082-JAW, 2016 WL 7477540 (D. Me. Dec. 29, 2016), *clarified on other grounds*, 2017 WL 238419 (D. Me. Jan. 19, 2017) (rec. dec., *aff'd* Feb. 7, 2017), for the proposition that the opinions offered by Meuse in this case fell within the scope of permissible vocational testimony. In *Dishman*, however, Meuse applied interpretations included in psychologists' reports "to his knowledge of the jobs at issue, which is what a vocational expert does." *Dishman*, 2016 WL 7477540, at *4.  In this case, by contrast, Meuse derived functional limitations from his reading of the *DSM-V* and the plaintiff's work and earnings history. *See* Record at 268-69.